ALLIANCE SERVICES,
INC., Plaintiff,

v.

UNITED STATES of America by and through the COMMISSIONER OF IN-TERNAL REVENUE SERVICE, Defendant.

No. 1:04–CV–12–BBM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 10, 2005.

David Decoursey Aughtry, Chamberlain Hrdlicka White Williams & Martin, Atlanta, GA, for Plaintiff.

Michael N. Wilcove, U.S. Department of Justice Tax Division, Washington, DC, for Defendant.

## *ORDER*

MARTIN, District Judge.

This matter is before the court on the Defendant's Motion for Partial Summary Judgment [Doc. No. 19] and Plaintiff's Cross–Motion for Summary Judgment [Doc. No. 23].[1]

### I.  *Factual and Procedural History*

Plaintiff Alliance Services, Inc. ("Alliance"), a Georgia corporation, formerly had two lines of business: (1) providing security guard services and (2) providing ATM services to financial institutions. In 1999 and 2000, Alliance suffered approximately $120,000.00 in losses attributed to theft by employees. For two and a half years, from 2000 until mid–2002, Alliance paid only small portions of federal employment taxes. As of March 29, 2004, Alliance's tax liability, including the unpaid taxes and penalties, was $3,613,291.77. For the first three quarters of 2000, the IRS assessed trust fund penalties against Robert Savoy ("Savoy"), the president and sole shareholder of Alliance, pursuant to 26 U.S.C. § 6672.[2]

---

1. Defendant has filed a Motion for Partial Summary Judgment because the issues in this case are bifurcated. The first issue to be determined is whether Defendant abused its discretion in upholding the use of a levy to collect Plaintiff's unpaid federal employment tax liabilities. The second issue is whether penalties for failing to timely pay and deposit federal employment tax liabilities should be abated on the grounds that there was reasonable cause for the failure to pay and deposit. If the court finds for Plaintiff on the first issue, the second issue will not need to be evaluated. If the court finds for Defendant on the first issue, the parties will, in accordance with the scheduling order, undertake discovery and present the second issue to the court. The court has reviewed Plaintiff's Cross–Motion for Summary Judgment. Although it is not entitled as a partial motion, it too addresses only the first issue.

2. Section 6672 of the Internal Revenue Code provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect

On April 4, 2002, Alliance and Alliance Service Acquisition, LLC ("ASA"), entered an asset purchase agreement under which Alliance agreed to sell to ASA its assets relating to its ATM services. The asset purchase agreement provided that, at closing, Savoy had the right to borrow up to $800,000.00, subject to ASA's setting off of up to $90,000.00 for amounts, if any, which Savoy was required to indemnify ASA under the asset purchase agreement. On April 7, 2003, Savoy requested the line of credit from ASA. On April 8, 2003, Savoy was terminated by ASA for cause.

As a means to collect some of Alliance's unpaid federal employment tax liabilities, Defendant, the Internal Revenue Service ("IRS"), determined that a levy should be imposed and placed Alliance on notice of its collection method.[3] On or around March 14, 2001, Alliance filed a request for a collection due process hearing with the IRS. Alliance asserted that (1) the penalties and interest should be abated due to "reasonable cause" for the "late payment and late filing" of its employment taxes; (2) instead of a levy, Alliance should be permitted to pay the tax through an installment agreement; and (3) the federal tax lien should be released. The IRS confirmed its receipt of Alliance's request, and the hearing was assigned to IRS settlement officer Marilyn Alls ("Alls").

On December 31, 2002, Alliance submitted to Alls an offer to settle its delinquent federal employment tax liabilities of more than $3,000,000.00 for a payment of $250,000.00[4] through the IRS's Offer–in–Compromise program, explained in further detail below. Joseph Kennedy ("Kennedy"), an IRS offer specialist, reviewed the offer, considering the assets, liabilities, income, and expenses of Alliance and Savoy.[5] Kennedy determined that Alliance and Savoy could be expected to pay $1,317,517.00 on an offer and that a payment of $250,000.00 was insufficient. Alliance submitted a response dated September 10, 2003 to Kennedy's analysis. Alls then made adjustments to Kennedy's evaluation and determined that the minimum offer acceptable from Alliance was $687,309.40, which Alls rounded up to $700,000.00. On November 17, 2003, during a telephone conversation, Alliance requested that Alls send a facsimile containing the amended computation of assets, income, and expenses. Alls did so and requested, in her facsimile, a response from Alliance by November 19, 2003. After Alliance had received the facsimile, Alliance contacted Alls and asserted that the following changes in circumstances had occurred, adversely affecting Savoy's financial circumstances: (1) he had lost his job; (2) he had been unable to find a similar position

such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672.

3. Based on the Joint Stipulation of Facts, the IRS placed Alliance on notice of its intent to levy for liabilities owed from the first three quarters of 2000.

4. Although Alliance was placed on notice that the IRS intended to collect by levy liabilities from the first three quarters of 2000, Alliance's offer of $250,000.00 was intended to excuse all its outstanding employment tax liabilities for 2000 through 2002.

5. Because Savoy is the sole shareholder of Alliance and was deemed responsible for the failure to pay employment taxes, the IRS treated Alliance's corporate assets and Savoy's personal assets as indistinct. The court will do the same. The court will also refer to Alliance and Savoy interchangeably throughout this Order because they are inseparable for the purposes of the issues relevant in this case.

due to a covenant-not-to-compete; (3) he had been fired "for cause," and his former employer had refused to provide severance or other loans provided in the original purchase agreement; and (4) his wife had sued him for divorce.[6]

The IRS sent a letter dated December 4, 2003, in which it denied Alliance's offer.[7] On December 5, 2003, the IRS issued its Notice of Determination, upholding its decision to collect by levy.[8] The parties have filed motions for summary judgment, and both motions are opposed.[9]

## II. *Legal Analysis*

### A. Background

Section 6331(a) of the Internal Revenue Code provides that:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person. or on which there is a lien ....

26 U.S.C. § 6331(a). "No levy may be made ... unless the Secretary has notified such person in writing of their right to a hearing." 26 U.S.C. § 6330(a)(1). The hearing, referred to as a collection due process hearing, includes a meeting between the hearing officer and the taxpayer as well as any written correspondence regarding the substantive issues. *See* 26 C.F.R. § 301.6330–1(d)(2) Q & A–D6. The taxpayer "may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy ...." 26 U.S.C. § 6330(c)(2)(A). An IRS official must verify that the requirements of applicable law or administrative procedure have been met. *See id.* at § 6330(c)(1). In this case, no party disputes that the IRS has attempted to collect Alliance's employment tax liabilities through levy and that the relevant requirements for a collection due process hearing have been satisfied.

Through the IRS's Offer–in–Compromise program, the IRS and the taxpayer may reach an agreement that resolves the taxpayer's liability. Specifically, the IRS

---

6. Based on the court's review of the record, Alliance did not present evidence of these changes for the first time on November 17, 2003. According to Alliance, evidence that Savoy has diabetes was submitted on March 21, 2003; evidence that Savoy was a party in a covenant-not-to-compete was submitted on May 19, 2003; evidence of Savoy's age was submitted on September 10, 2003, as well as on December 31, 2002; and evidence that Savoy and his wife were engaged in divorce proceedings was submitted on September 10, 2003.

7. The denial letter stated:

> We are sorry, but your offer is rejected as insufficient since it is not our policy to give favorable consideration to an offer to compromise employment taxes unless the amount offered is equal to the unpaid tax (exclusive of penalty and interest) and the taxpayer's financial condition indicates no greater amount collectible.

As the IRS now admits, no such policy exists. The letter, a standard Appeals form letter,

was sent in error. Nevertheless, it is clear to the court that the IRS intended to communicate it was denying Alliance's offer to compromise its tax liabilities for $250,000.00.

8. According to the Joint Stipulation of Facts, the Notice of Determination refers to upholding collection by levy for the federal employment tax liabilities for all four calendar quarters of 2000, but the reference to the fourth calendar quarter of 2000 is in error. Alliance has not yet been placed on notice of collection by levy for the fourth calendar quarter of 2000. *See* 26 U.S.C. § 6330.

9. The court notes that the Clerk of Court issued a Notice to Respond to Plaintiff's November 1, 2004 Motion for Summary Judgment somewhat belatedly, on January 24, 2005. However, both parties have filed all permissible response and reply briefs to each other's motions. Therefore, the court will await no further filings.

may compromise a liability by accepting less than full payment if there is doubt as to liability, doubt as to collectibility, or to promote effective tax administration. *See generally* 26 U.S.C. § 7122(a); Fed. Tax Coordinator T–9610 (2d ed.2005). Based on a review of the taxpayer's financial status, the IRS determines the minimum acceptable level of an offer. *See* 26 C.F.R. § 301.7122–1. In this case, Alliance proposed an offer to settle its employment tax liabilities, which was considered and rejected by the IRS.

■ The instant dispute arises from the question of whether Alls, after considering the proceedings of the due process hearing and the accompanying materials provided by Alliance, exercised discretion properly in rejecting Alliance's offer to compromise its tax liabilities and upholding the levy. If the validity of a tax assessment was properly raised at the collection due process hearing, the decision as to validity is reviewed *de novo,* but all other determinations, such as those presently at issue in this case, are reviewed under an abuse of discretion standard, an extremely deferential form of review.[10] *See Johnson v. United States,* No. Civ. A. 1:03CV0475–GET, 2003 WL 22989550, at *3 (N.D.Ga. Oct.8, 2003) (Tidwell, J.); *MRCA Info. Servs. v. United States,* 145 F.Supp.2d 194, 199 (D.Conn.2000).

The Eleventh Circuit has observed that an "abuse of discretion" standard of review recognizes that for the matter in question there is a range of permissible choice for the decision-maker below.... So long as the decision under consideration does not amount to a clear error of judgment, a reviewing court may not reverse just because it would have gone the other way had the choice been its to make.

*Sillavan v. United States,* No. 01CV803, 2002 WL 400804, at *4 (N.D.Ala. Jan.11, 2002) (citing *McMahan v. Toto,* 256 F.3d 1120, 1128 (11th Cir.2001)). Another district court has also elaborated on the definition of abuse of discretion. "[A]n arbitrary action not justifiable in light of the facts and circumstances presented in the record" or a decision "made without a rational explanation" constitutes an abuse of discretion. *Dudley's Commercial & Indus. Coating, Inc. v. United States Internal Revenue Serv.,* 292 F.Supp.2d 976, 985 (M.D.Tenn.2003) (citations omitted). Because the court will review Alls' action under an abuse of discretion standard, its review will be limited to the administrative record, *see Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), which consists of the collection due process hearing and the subsequent communications leading up to the IRS's ultimate decision.[11]

**B. Applicable Legal Standard**[12]

---

10. Title 26 U.S.C. § 6330(d) provides for judicial review of administrative decisions of the IRS, but the statute is silent with respect to the standard of review a court must apply. Courts have determined the standards of review by examining legislative history. *See* H. Rep. No. 105–599 at 266 (1998).

11. Plaintiff attempts to persuade the court that *Robinette v. C.I.R.,* 123 T.C. No. 5, 2004 WL 1616381 (2004), allows the court to look outside the administrative record in its review. In *Robinette,* the court held that it could consider relevant evidence that the taxpayer attempted to introduce at the collection

due process hearing, but which the IRS official refused to consider. *Id.* In this case, as is explained more fully below, Alls did not refuse to consider evidence but simply rejected it as insufficient. Thus, the court is not persuaded it should follow the holding of the *Robinette* court.

12. Some courts have construed a motion for summary judgment as a motion for judgment, seeking affirmance of the IRS's determination. *See MRCA Info. Servs.,* 145 F.Supp.2d at 195 n. 3 (" '[a] motion for summary judgment ... makes *no procedural sense when a* district court is asked to undertake judicial

Summary judgment is proper "if ... there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The plaintiff must do more than show some level of doubt as to the material facts. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ...." *Id.* at 252, 106 S.Ct. 2505. As such, the non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997).

### C. Motions for Summary Judgment

Alliance moves for summary judgment because it asserts that the IRS abused its discretion in denying Alliance's offer and thereby abused its discretion in upholding collection by levy of Alliance's employment tax liabilities. Specifically, Alliance states: (1) the lapsed right to borrow money from ASA is a revoked line of credit and should not be considered an asset; (2) the IRS improperly refused to consider adverse consequences of certain changes in Savoy's life; (3) the IRS based its denial of Alliance's offer on a non-existent policy; (4) the IRS did not provide reasonable time for Alliance to provide collection alternatives before issuing its Notice of Determination; and (5) the levy violated statutory

requirements with respect to the fourth quarter of 2000. The IRS moves for summary judgment because it asserts that Alls did not abuse her discretion in sustaining the use of a levy to collect Alliance's unpaid federal employment tax liabilities.

*Consideration of the Loan as an Asset*

In April 2002, when Alliance sold a portion of its business to ASA, as part of the consideration, ASA agreed to lend Savoy $710,000. Based upon this, Alls factored in $350,000 as a source of funds from which Savoy could pay his tax liability.[13] Savoy asserts that Alls should not have treated the loan as an asset, or at least as an asset with any value, because he was terminated for cause and asserts he could no longer gain access to the loan.[14] The IRS defends its action on the grounds that Savoy's right to borrow was not tied to his employment, and Savoy provided no evidence supporting that the loan from ASA was no longer available to him. The court must first determine whether Alliance presented evidence to Alls that the loan was not available to Savoy. If so, then the court must evaluate whether Alls abused her discretion in characterizing the loan as an asset to be factored into the minimum acceptable offer.

The record shows that Joseph Odom ("Odom"), Alliance's representative, sent a letter dated September 10, 2003 to the IRS, in which he explained that ASA had refused to provide any amount of the line of credit to Savoy. The court recognizes Alls' assertion that Alliance did not provide certain documents related to the litigation

---

review of agency action'") (citation omitted); *Siquieros v. United States*, No. EP–03–CA–0478–FM, 2004 WL 2011367, *3 n. 10 (W.D.Tex.2004).

**13.** Originally, Kennedy had factored in the full amount of the loan as an asset, but Alls reduced the amount.

**14.** Savoy does not state that he has no legal rights to the loan. In fact, it appears that he pursued litigation against ASA briefly, but Savoy asserts that he was financially unable to continue his action against ASA. Savoy states, on the other hand, that he has been able to pursue the instant litigation because his lawyer is not billing him for legal services.

between Savoy and ASA over the unpaid loan, yet Alls also acknowledges that Alliance had asserted to her that ASA was refusing to provide the loan to Savoy. Additionally, Odom avers that in previous conversations with the IRS, Odom offered to enter into a collateral agreement [15] assigning at least a portion of any loan proceeds Savoy ever received under the line of credit, but the offer was ignored. Alls states that she "do[es] not recall this statement, although it may have been made." Based on the evidence in the record, it appears to the court that the IRS was aware that ASA had not paid the loan to Savoy.

■ Next, the court must evaluate whether it was within the IRS's discretion to characterize the loan as an asset. According to the IRS's policies, it is entirely proper for a taxpayer to satisfy a liability with borrowed assets. *See generally* Internal Revenue Manual § 5.8.5.3.3 (noting that the IRS will consider future effects on expenses and income when a taxpayer borrows against an income-producing asset to contribute proceeds to an offer); Internal Revenue Manual § 5.8.3.19.2 (noting that the IRS may mandate that taxpayers secure a loan on their equity or enforce collection through levy); Internal Revenue

Manual § 5.8.5.3.7 (noting that the IRS will adjust the value of a taxpayer's insurance policy if he has borrowed on the policy to help fund an offer).[16] Moreover, the record shows that, in assessing the value of the loan, Alls did not attribute to the loan its full value, perhaps taking into account that there may be viable legal grounds upon which ASA could be forced to pay the loan,[17] or, on the other hand, that by failing to seek the loan upon closing of the asset purchase agreement between Alliance and ASA in July 2002, Savoy jeopardized his ability to get the loan proceeds. The court also recognizes the IRS's alternative contention that the right originally provided by ASA was not a loan but was instead a right to draw, potentially resulting in full forgiveness of any liability Savoy would have to ASA. However, the court is mindful that the documents that provided this information to the IRS were not contained in the administrative record and are therefore outside the review of the court. In any event, the court has determined the IRS's treatment of the loan as an asset was within its discretion and did not constitute an error in judgment.

*Consideration of Future Wages*

In calculating the minimum level for an acceptable offer from Alliance, Alls deter-

**15.** A collateral agreement allows the IRS to collect funds in addition to the amount actually secured through the offer or to add additional terms to the offer. *See* Internal Revenue Manual § 5.8.6.1.

**16.** The court recognizes that there are differences between the examples described in the Internal Revenue Manual and the facts presented here, but by referring to the Manual, the court is aware that a loan, in general terms, can be used to contribute proceeds to a taxpayer's offer.

Also with regard to the loan, the IRS has pointed out that the loan here was bargained for during the negotiation of the asset purchase agreement. Had the loan not been a part of the deal the parties reached, the par-

ties may have bargained for a higher price, an amount which certainly would have been characterized as an asset.

**17.** Alliance argues that the IRS's refusal to enter a collateral agreement, *see* Internal Revenue Manual §§ 5.8.6.1 and 5.8.6.3, in which it would accept assignment of rights to the loan, evinces the IRS's belief that the loan was without value. The IRS contends that if it had accepted an assignment of rights, it would have had to rely on Savoy's continued willingness to pursue any legal rights against ASA, and it was unwilling to assume that risk. Considering this, the court finds that the IRS's refusal to enter a collateral agreement does not contradict its position that the loan from ASA has value.

mined that Savoy could pay $12,500 per month in wages for a period of forty-eight months. The IRS asserts that it considers a person's ability to contribute wages as long as he is healthy, even if he is not currently employed. Alliance contends that Alls failed to consider how difficult it will be for Savoy to continue working in light of the following facts: (1) Savoy was fired "for cause" and has not been working for the past seven months; (2) Savoy is 64 years old; (3) Savoy suffers from serious health problems, including diabetes; (4) Savoy is constrained by a covenant-not-to-compete; and (5) Savoy is involved in divorce proceedings.

The Internal Revenue Manual states that future income is "an estimate of the taxpayer's ability to pay based on an analysis of gross income, less necessary living expenses." See Internal Revenue Manual § 5.8.5.5.[18] Generally speaking, it was appropriate for Alls to consider Savoy's future income even though he was unemployed. For a taxpayer who is unemployed, the IRS analyst should "[u]se the level of income expected if the taxpayer were fully employed." Id.

If Alls had evidence that Savoy's ability to earn future income was adversely affected, it was incumbent upon her to consider that evidence and make appropriate adjustments. According to the Internal Revenue Manual, if a taxpayer is elderly, in poor health, or both and the ability to continue working is questionable, the IRS analyst should adjust the amount or number of payments to the expected earnings. Id. First, the court will evaluate whether Alls was provided evidence related to the alleged changed circumstances affecting

Savoy, and, if so, whether Alls abused her discretion with regard to this evidence.

Although Alls was aware of Savoy's age, she was not aware that Savoy had a disability. The medical information provided by Alliance simply showed that Savoy and his ex-wife had medical expenses. Alls states that she was aware that Savoy was divorced but had been told by Odom that the details of alimony and permanent support payments had not yet been established. And, finally, Alls notes that she was aware of the existence of a covenant-not-to-compete affecting Savoy, but the covenant was never provided to her during the time of consideration.

■ The court finds that Alls' determination that Savoy could pay $12,500.00 per month was not an abuse of discretion. The fact that Savoy was at an age when many people retire does not mean he was incapable of earning income.[19] The court is aware that Savoy suffers from diabetes, a disease with many negative symptoms. However, Savoy provided no evidence that his diabetes prevents him from working. Similarly, knowledge that a taxpayer has been through a divorce, without definite support terms, is alone not enough to show Savoy could not contribute future income. Finally, the court notes that a covenant-not-to-compete does not prohibit someone from working at all, but simply from working in a limited field for a limited time and in a limited area. The court's review of the administrative record shows little evidence about any of these changed circumstances in Savoy's life that adversely affected him financially, and the fact that this limited evidence did not cause Alls to

---

**18.** In 2000, this section of the Internal Revenue Manual was known as § 5.8.5.4.

**19.** The court notes that retirement is not a right. Assuming an individual is not physically or mentally impaired, he chooses to retire

because it is no longer necessary to work. The court is not prepared to pronounce that because a taxpayer has reached an age generally considered a retirement age, he does not have to contribute future income to satisfy significant tax liabilities.

conclude that Savoy could not contribute the determined amount of future income was entirely and reasonably within her discretion.

Alliance urges, however, that Alls' decision was improper because Alls was required to consider Savoy's changed circumstances and conduct further investigation. To support its position, Alliance relies on *Cavanaugh v. United States*, No. 03–250, 2004 WL 880442 (D.N.J. Mar.23, 2004). In *Cavanaugh*, the taxpayer requested review of the IRS's determination because the IRS officer failed to take into account the change in the taxpayer's financial and family circumstances.[20]  *Id.* at *2. The IRS officer would not consider the offer because she believed she was prohibited from doing so by 26 U.S.C. § 6330(c)(4), which provides that an "issue may not be raised at the ... hearing if the issue was raised and considered at a previous hearing ... and the person seeking to raise the issue participated meaningfully in such hearing." *Id.* at *7. The *Cavanaugh* court held that a refusal to consider changed circumstances at a hearing would be an abuse of discretion. *Id.* The court finds *Cavanaugh* to be inapposite because, in this case, Alls does not assert that she refused to consider changed circumstances but simply that she considered the evidence presented related to Savoy's changed circumstances

and found it insufficient to contradict her findings that Savoy could gain income in the future.[21]

Finally, Alliance argues that Alls failed to note in her Notice of Determination that she considered Savoy's changed circumstances. The *Cavanaugh* court states:

> The IRS ... should give some indication *in its Notice of Determination* of why it accepted or rejected the arguments the taxpayer raised at the [collection due process] hearing. *Post hoc* rationalizations are not an adequate basis for judicial review of informal agency action.

*Id.* at *9 (citations omitted); *see also Camp*, 411 U.S. at 142, 93 S.Ct. 1241 ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). The court acknowledges that Alls' Notice of Determination does not discuss Savoy's changed circumstances. The court does have an Affidavit from Alls, in which she asserts that she reviewed the relevant evidence submitted by Savoy, but this affidavit is outside the scope of the administrative record. Nevertheless, the court has reviewed the full administrative record containing that evidence, and finds that Alls acted within her discretion to determine that the evidence presented to show changed circumstances was insufficient to cause her to alter her calculation of expected future income.

**20.** In *Cavanaugh*, the taxpayer had fathered a child with a woman other than his wife, his wife had divorced him, he lost his job, he had health problems, and had insolvency and foreclosure proceedings brought against some of his assets. 2004 WL 880442, at *2.

**21.** Alliance also relies on *Cavanaugh* for the contention that Alls had a duty to investigate if the evidence of changed circumstances was insufficient. *Cavanaugh*, 2004 WL 880442, at *8–9. The court has already determined that the facts of *Cavanaugh* are distinguishable from the facts of this case. The court also

notes that it is not bound by the holding of the case. In any event, the *Cavanaugh* court did not hold that there is always a duty to investigate but simply determined that either the IRS official should have followed IRS policy as set forth in the Internal Revenue Manual § 5.8.3.5.1, which is not at issue in this case, or discussed the insufficiency of the evidence in the Notice of Determination. *Id.* Additionally, as a policy matter, the burden cannot be placed entirely upon the IRS to smoke out details of factual assertions that are uniquely within the purview of the taxpayer.

Certainly, the court would have preferred for Alls to outline in detail each item of evidence she reviewed during the decision-making process, but the court also realizes how administratively burdensome it would be to require an IRS official to denote every step she took during her deliberation. In this case, Alls reviewed the record before her, finding certain evidence favorable to Savoy, certain evidence unfavorable to Savoy, and certain evidence immaterial to her decision. In the current posture of this case, reviewing the actions of the IRS by way of an abuse of discretion standard, the court is unwilling to find that an IRS official is required to outline what evidence she finds insubstantial in reaching her ultimate decision. It would be within the court's power to request that Alls resubmit a more detailed Notice of Determination, in which she would likely note that she found the evidence Savoy presented of changed circumstances to be immaterial to her decisions, but based upon Alls' affidavit submitted in this action, it appears to the court that the outcome would be the same. Consequently, the court will not require additional efforts by the IRS.

*Upholding the Levy Based on Non–Policy*

█ In a letter dated December 4, 2003, the IRS sent a letter to Alliance that stated:

> We are sorry, but your offer is rejected as insufficient since it is not our policy to give favorable consideration to an offer to compromise employment taxes unless the amount offered is equal to the unpaid tax (exclusive of penalty and interest) and the taxpayer's financial condition indicates no greater amount is collectible.

In its Notice of Determination, dated December 5, 2003, the IRS informed Alliance that the levy would be sustained because "[t]he taxpayer corporation has failed to propose a collection alternative other than an Offer in Compromise that has been rejected." Both parties agree that the IRS has no policy as that set forth in the letter dated December 4, 2003. Yet, Alliance speculates that the IRS's determination was based on the policy as set forth in the letter, and thus the IRS acted improperly. Alliance offers no evidence in support of its position. The IRS has responded that the letter is a standard form letter, sent to Alliance in error, and that the policy announced in the letter was not employed in this case. The court has reviewed the administrative record and the Notice of Determination and cannot find any evidence that the IRS followed the policy outlined in its December 4, 2003 letter to make its determination in this case.

*Reasonable Time to Propose Alternatives*

Alliance asserts that the IRS's denial of Alliance's offer was too closely followed by its Notice of Determination sustaining the levy, issued the next day, and that Alliance was not provided adequate time to offer a proposed collection alternative. According to Alliance, after receiving Alls' work papers on November 17, 2003, Odom spoke with Alls about Savoy's change in circumstances. At that time, Odom believed Alls was going to confer with her supervisor and follow up with Odom. Alls did not contact Odom again and denied the offer and sustained the levy. Alls avers that Odom did not ask her to confer with her supervisor during their conversation. Having requested a response by November 19, 2003 and receiving no alternative offers or detailed response to her work papers, she believed it was proper to deny Alliance's offer and sustain the levy.

█ The court has reviewed the administrative record and finds that Alliance was permitted to submit evidence throughout the time Alls was considering Savoy's offer, a period which extended for more than

a year. Savoy submitted evidence of his changed circumstances on many occasions before November 17, 2003, as noted above, and thus Alls would have had such evidence in her possession prior to that time. Alliance provides the court with no authority for the proposition that Alls was required to reconsider evidence of Savoy's changed circumstances, which she had previously received, or for the proposition that the IRS has to wait a certain period of time between rejecting a taxpayer's compromise offer and upholding a levy to collect that taxpayer's outstanding tax liabilities. Thus, the court cannot find the IRS acted improperly in acting quickly to deny Alliance's offer and uphold the collection levy.

*Upholding the Levy Although It Included the Fourth Quarter of 2000*

Alliance urges that the levy should be stricken because statutory levy notice requirements were not complied with regarding outstanding tax liabilities for the fourth quarter of 2000, yet the Notice of Determination referred to this quarter. *See* 26 U.S.C. § 6330. The IRS acknowledges its Notice of Determination incorrectly referred to the fourth quarter of 2000 and that the collection levy is related to liabilities from the first three quarters of 2000 only. Because the IRS admits its clerical error, the court does not find grounds on which to strike the entire levy.

## III. *Summary*

In sum, because the IRS did not abuse its discretion in denying Alliance's offer and upholding the collection of Alliance's tax liabilities by levy, Defendant's Motion for Partial Summary Judgment [Doc. No. 19] is GRANTED, and Plaintiff's Cross–Motion for Summary Judgment [Doc. No. 23] is DENIED.

In accordance with the Preliminary Report and Discovery Plan dated May 7, 2004, the Defendant is hereby ORDERED to file its motion regarding this court's subject matter jurisdiction on the issue of abatement of penalties, within fourteen (14) days of the date of this Order. Plaintiff's response brief shall be filed within fourteen (14) days after the filing of Defendant's motion. If no jurisdictional issue is raised, the parties are to proceed with requested discovery, which will expire four (4) months from the date of this Order, on June 10, 2005.